UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TRACY WARNER | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO.: 1:24-cv-451-HAB |
| | ) |
| ALLEN COUNTY SHERIFF, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

**OPINION AND ORDER**

Plaintiff, Tracy Warner ("Warner"), sued various police departments and police officers for their actions during the execution of a search warrant at her residence. She asserts causes of action under 42 U.S.C. § 1983 and several tort claims under Indiana law against—among others— the State of Indiana, Indiana State Trooper Clint Hetrick, and Jane/John Does. Before the Court is those parties'—the State and its employees—Partial Motion to Dismiss (ECF No. 8) Warner's claims under Federal Rule of Civil Procedure 12(b)(6). That motion is now fully briefed (ECF Nos. 9, 11, 16) and ripe for ruling.

**I.     Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted); *see also Ray v. City of Chi.*, 629 F.3d 660, 662-63 (7th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual

1

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. When analyzing a motion to dismiss a claim under Rule 12(b)(6), the factual allegations in the complaint must be accepted as true and viewed in the light most favorable to the plaintiff. *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1006 (7th Cir. 2000).

That said, the Court is not "obliged to accept as true legal conclusions or unsupported conclusions of fact." *Bielanski v. Cty. Of Kane,* 550 F.3d 632 (7th Cir. 2008). And "[t]hreadbare recitals of the elements of a cause of action, supported by merely conclusory statements do not suffice." *Iqbal*, 556 U.S. at 678.

## II. Well-Pleaded Facts

On September 7, 2023, Warner was present at her home when several police officers came to serve a search warrant for the property. (ECF No. 3, ¶ 4; ECF No. 3-1). Relevant here, Indiana State Police Officer, Clint Hetrick ("Officer Hetrick"), and several unnamed officers participated in the execution of the warrant. (ECF No. 3, ¶ 6). When officers arrived at Warner's home, they escorted her to a table just outside to explain why they were there. (ECF No. 3-1). Officers then showed Warner the search warrant which caused her to suffer asthma attack. (*Id.*). After receiving her inhaler, officers questioned Warner about her son who was not present at the residence. (*Id.*).

Once calm, Warner reentered her home as officers were conducting the search and spotted one officer rifling through her purse. (*Id.*). When Warner commented on the officer's search of her purse, he "grabbed [Warner's] arm, twisted it hard behind her back and threw her on the stairway." (*Id.*). "He squeezed her arm so tightly that it left bruises…[and] continued to squeeze and twist her arms behind her back causing unnecessary and unreasonable pain." (*Id.*). During the search, officers also damaged Warner's garage door and put holes in her ceiling. (*Id.*). And officers seized two envelopes found in the home that contained $11,000. (*Id.*).

2

Four days later, local officers and "possibly Indiana State Police" returned to Warner's home. (*Id.*). This time, Warner noticed officers surrounding her property and, again, she suffered an asthma attack. (*Id.*). During this incident, "officers…harassed [Warner] by shining bright flashlights in her face and through the window." (*Id.*). After some time, Warner walked to her porch and asked the officers to leave. (*Id.*). The officers left about five minutes later. (*Id.*).

Warner then sued, among others, the State of Indiana ("The State") and Officer Hetrick (collectively "State Defendants") alleging that the officers' conduct on September 7th was unreasonable under the Fourth Amendment and 42 U.S.C. § 1983. She also brought state tort claims of theft, conversion, and battery related to the same incident. And Warner appears to allege that officers committed false arrest and false imprisonment during the September 11th incident.

### III.    Discussion

The State Defendants now move to dismiss all claims against the State and the tort claims asserted against Officer Hetrick. Because Warner only claims that the "[State] is responsible…under the doctrine of *respondeat superior*[,]" the State Defendants argue that there can be no liability under Section 1983. *See Horshaw v. Casper,* 910 F.3d 1027, 1029 (7th Cir. 2018) ("Liability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly."). And Warner concedes that there can be no Section 1983 claim against the State here: "If the State is responsible at all, it is responsible under the tort laws of the State of Indiana." (ECF No. 11 at 2). Having disposed of the sole federal component of the State Defendants' motion, the issue thus becomes whether the State Defendants may be liable under tort law. Under Indiana law, Indiana's Tort Claims Act ("ITCA") informs that inquiry. *See Vill. of Coll. Corner v. Town of W. Coll. Corner*, 766 N.E.2d 742, 745 (Ind. Ct. App. 2002) ("[T]he clear intention of [the ITCA]

was to set up a uniform body of law to govern the prosecution of tort claims…against the State and other governmental entities.").

The State Defendants first argue that Warner's tort claims against the State must be dismissed because the State receives blanket immunity from suit under the ITCA. (ECF No. 9 at 6). Second, they argue that Officer Hetrick is immune from suit because he was acting in the scope of his employment as a police officer for the State. (*Id.* at 8; *See also* I.C. § 34-13-3-5(b) ("[A] lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally."). And they argue that Officer Hetrick and the State are entitled to immunity under the ITCA because any alleged tort occurred while officers were executing a valid search warrant. (*Id.* at 9; *See also* Ind. Code § 34-13-3-3(8)(A) (granting immunity for "a government entity or an employee" for "[t]he adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations).")). Lastly, the State Defendants argue that any Jane/John Doe state police officer must be dismissed because no unnamed officer would have sufficient notice of this lawsuit and "'this type of placeholder does not open the door to relation back under Fed. R. Civ. P. 15[.]'" (*Id.* at 11 (citing *Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997)). The Court addresses each argument in turn below.

   1. **Sovereign Immunity under the ITCA**

The State Defendants first contend that any tort claims against the State must be dismissed because it "is entitled to [sovereign] immunity under the [ITCA.]" (ECF No. 9 at 6-7). Indeed, "states like Indiana, as sovereigns in their own right, have developed their own sovereign-immunity doctrines for use in their own courts. Indiana adopted the principle of sovereign immunity from its very beginning." *Lowe v. N. Indiana Commuter Transp. Dist.*, 177 N.E.3d 796, 802 (Ind. 2021). Under the common-law doctrine, "the state and its various entities generally could

4

not be sued in tort." *Id.* Yet the Indiana Supreme Court abolished sovereign immunity in 1972, *see Campbell v. State*, 284 N.E.2d 733 (Ind. 1972), only for the legislature to replace it with "limited immunity from tort claims via the [ITCA]" quickly thereafter. *Lowe,* 177 N.E.3d at 802. The issue thus becomes whether the ITCA provides blanket immunity for the State and maintains the principle of sovereign immunity in Indiana. *See id.* ("[W]hen applying our state's sovereign-immunity doctrine vis-à-vis tort claims, where we once looked to our common-law tradition, we now look to the [ITCA].").

The State Defendants argument appears somewhat novel, but they do not come empty handed. They rely on *Cantrell v. Morris*, 849 N.E.2d 488, 495 (Ind. 2006), for the notion that the ITCA "does not create causes of action and did not constitute a waiver of sovereign immunity." And in *Lowe,* the Court noted that "[s]tate sovereign immunity, as a general term…protects states from being sued by their own citizens in their own courts." 177 N.E.3d at 802. Even so, context matters. And the cases that the State Defendants rely on do not support blanket immunity for the State under the ITCA.

Starting with *Cantrell,* its holding was not so broad as to provide the State with complete protection from tort suits. In that case, the Court was tasked with answering a much narrower question:

> Does an employee of a state or local governmental agency whose discharge is alleged to have violated rights of free speech guaranteed by Article I, Section 9 of the Indiana Constitution assert a claim for money damages against the unit of government or any individual responsible for the firing, and, if so, what is the source of that claim and what are its elements?

*Cantrell*, 849 N.E.2d at 491. And the Court stated—regarding the ITCA—that "*as applied to claims for wrongful discharge*, we think this body of law remains subject to the 'discretionary act' immunity of the ITCA." *Id.* at 496-97 (emphasis added). *Cantrell*'s ITCA analysis only focused

5

on a claim for wrongful discharge and the State was not even a party to the lawsuit. Rather, the Court discussed a state employee's actions while working within their scope of employment. *Id.* at 497 (holding "in most circumstances the ITCA provides practical immunity to the government officer in his or her individual capacity by providing that the governmental unit is to defend and pay any judgment for actions taken within the scope of employment[.]"). More on discretionary immunity later but, for now, suffice to say that *Cantrell* does not provide the State with sovereign immunity under the ITCA.

As for *Lowe,* the statement that the State Defendants rely on was discussing sovereign immunity in "general term[s]" and before the Court's analysis under the ITCA. *Id.* at 801. And that Court was tasked with answering whether the plaintiff complied with notice requirements under the ITCA and whether the State consented to suit under the Federal Employers' Liability Act. *Id.* As with *Cantrell,* it did not hold that the State was entitled to blanket immunity under the ITCA: "Under the Act, the [defendant] is a political subdivision, and any claim against it is barred unless a claimant provides notice within 180 days of the injury. [The plaintiff's] arguments neither legally nor factually excuse his failing to provide timely notice." *Id.* at 805.

Having distinguished that authority, the Court turns to the ITCA itself. The State Defendants argue that "[w]hile government entities and their employees may be liable… in tort…the State of Indiana itself is not." (ECF No. 9 at 7). That is not correct as "[t]he ITCA allows lawsuits against the State, but only under certain circumstances and only for certain harms." *Ladra v. State*, 177 N.E.3d 412, 426 (Ind. 2021) (Massa, J., dissenting). The ITCA's immunity provision, Ind. Code § 34-13-3-3, states that a "governmental entity…is not liable if a loss results from" several enumerated circumstances. Ind. Code § 34-13-3-3(a). A "government entity" is "the state or a political subdivision of the state." Ind. Code § 34-13-3-49. With that statutory backdrop, it

6

seems clear that the State does not receive blanket immunity under the ITCA. The legislative scheme is set up to hold the State liable for torts unless it falls under the purview of Ind. Code § 34-13-3-3(a). Because there is no blanket immunity for the State under the ITCA, Warner can pursue her tort claims under a theory of vicarious liability.

### 2. Scope of Employment Immunity under the ITCA

Turning to Officer Hetrick, the State Defendants argue that he is immune from liability because he was acting in the scope of his employment as a police officer when any tortious conduct occurred. In line with that argument, the ITCA provides that "a lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally." Ind. Code § 34-13-3-5(b). And Warner pleads that, at the time of the alleged torts, Officer Hetrick was "acting under the color of law acting as a police officer for the state of Indiana." (ECF No. 3, ¶ 6). Because "[a]ll actions giving rise to Warner's tort claims fall within [Officer] Hetrick's scope of employment," the State Defendants argue that he is entitled to immunity under the ITCA.

Although Warner failed to provide a single citation to authority, she responds that "[Officer] Hetrick can only take advantage of immunity if his actions were within the scope of his employment" and, if his actions were not, then the "[ITCA] provides no immunity." (ECF No. 11 at 2-3). Warner's briefing, no doubt, leaves something to be desired and is somewhat disjointed. But what Warner appears to be arguing is that the question of who is liable—the State or Officer Hetrick—hinges on whether Officer Hetrick was acting within the scope of his employment. And that is a valid argument.

Had Warner plead that Officer Hetrick was within the scope of employment at all relevant times, as the State Defendants suggest, then the Court could dismiss the tort claims against Officer

7

Hetrick. But that is not exactly what Warner says: "[Officer Hetrick] is sued in his individual capacity as a person acting under color of law acting as a police officer for the State of Indiana." (ECF No. 3, ¶ 6). The Court believes that Officer Hetrick could work outside the scope of his employment despite "acting under color of law." And "[g]enerally, whether the tortious act of an employee is within the scope of employment is a question of fact." *Bushong v. Williamson*, 790 N.E.2d 467, 473 (Ind. 2003).

To that end, Warner argues that Officer Hetrick could have been acting outside of his employment by, for example, "using excessive force, engaging in an overbroad search, [stealing] money…or destr[oying] Plaintiff's property." (ECF No. 11 at 3). That point is well taken and the Court notes that all authority relied on by the State Defendants was decided at the summary judgment stage. *See Celebration Fireworks, Inc. v. Smith,* 727 N.E.2d 450 (Ind. 2000); *Fermaglich v. Indiana*, 2004 WL 2750262 (S.D. Ind. Sept. 29, 2004); *Brown v. City of Fort Wayne*, 752 F. Supp. 2d 925 (N.D. Ind. 2010); *McConnell v. McKillip*, 573 F. Supp. 2d 1090 (S.D. Ind. 2008). The Court simply cannot determine whether the alleged torts fell outside of Officer Hetrick's scope of employment from the Complaint. Discovery will shed light on that issue and summary judgment is the appropriate vehicle for such a determination.

### 3. Law Enforcement Immunity under the ITCA

The State Defendants next argue that Warner's tort claims should be dismissed because they are entitled to law enforcement immunity. Under the ITCA, "[a] governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from…[t]he adoption and enforcement of or failure to adopt or enforce…a law (including rules and regulations)…unless the act of enforcement constitutes false arrest or false imprisonment." Ind. Code § 34–13–3–3(8). And indeed, "the execution of a valid search warrant is conduct

undertaken to enforce the law[.]" *Brown,* 752 F. Supp. 2d at 944. But as with the above analysis, Officer Hetrick is only entitled to immunity under § 34–13–3–3(8) if his actions fell within the scope of his employment—a determination the Court cannot make based on the Complaint. The question thus becomes whether the State is immune from tort liability because, if the State is liable in tort at all, it requires a finding that Officer Hetrick was acting within the scope of his employment during the warrant's execution.

To start, Plaintiff's Tort Claim Notice—incorporated by reference into the Complaint—alleges that "on September 11, 2023,…officers believed to be from the…Indiana State Police…subjected [Warner] to false arrest and false imprisonment." (ECF No. 3-1 at 2-3). The ITCA explicitly denies law enforcement immunity for such claims, so Warner may proceed against the State for false arrest and false imprisonment. *See* Ind. Code § 34–13–3–3(8). But Warner's claims for assault, battery, and conversion require more attention as those causes of action are not expressly contemplated by § 34–13–3–3(8).

To that end, "enforcement" means "those activities in which a government entity or its employees compel or attempt to compel the obedience of another to laws, rules or regulations, or sanction or attempt to sanction a violation thereof." *Savieo v. City of New Haven*, 824 N.E.2d 1272, 1275 (Ind. Ct. App. 2005). And the Court concedes that most actions by officers executing a valid search warrant would likely fall under the meaning of "enforcement." Even still, the Court believes Warner has pleaded enough to pursue her claims. Again, summary judgment may tell a different tale, but her Complaint survives the dismissal stage.

As with the State Defendants' analysis on scope of employment immunity, all cases they cite were decided on summary judgment and with the benefit of fully developed facts. *See id.; Fermaglich*, 2004 WL 2750262; *Brown,* 752 F. Supp. 2d 925. Those cases do not necessarily

support a finding that any time officers are executing a valid search warrant, law enforcement immunity applies. Moreover, all of those cases determined that officers were acting pursuant to a "valid" search warrant. Although the State Defendants argue that officers "were executing a valid search warrant," nowhere does the Complaint or the Tort Claims Notice concede that the search warrant at issue was "valid." *See Freeman v. Indiana*, 2019 WL 357051, at *6-8 (N.D. Ind. Jan. 29, 2019) (addressing the validity of the search warrant on summary judgment). If the search warrant was not valid, it follows that officers' actions may have run afoul the meaning of law enforcement. But the Court does not know if the warrant at issue was, in fact, valid.

Validity of the warrant aside, the Court can imagine a scenario where an assault, battery, or theft of property fall outside the definition of enforcement. *See Strain v. Minnick,* 2015 WL 6550628 (S.D. Ind. Oct. 28, 2015) ("Immunity does not preclude claims of assault or battery against governmental entities or officers when a plaintiff alleges excessive force."); *Freeman,* 2019 WL 357051, at *11 (stating that the ITCA is the post-deprivation remedy for property loss caused by government employees). Simply, more factual development is needed to determine whether these immunity provisions under the ITCA apply. This is all the more true considering "[g]overnmental immunity is narrowly construed against a plaintiff's right to file suit." *Fermaglich*, 2004 WL 2750262, at *45 (citing *Mangold v. Ind. Dep't of Nat. Res.,* 756 N.E.2d 970, 975 (Ind.2001)). Warner may thus proceed on her tort claims at this early stage.

### 4. Claims against Jane and John Doe.

Lastly, the State Defendants argue that any claim against Jane/John Does as officers for the State should be dismissed. In the Seventh Circuit, suing an anonymous or Jane/John Doe defendant "is viewed with disfavor." *Strauss v. City of Chicago*, 760 F.2d 765, 770 n.6 (7th Cir. 1985). And "it is pointless to include [an] anonymous defendant [] in federal court; this type of

placeholder does not open the door to relation back under Fed. R. Civ. P. 15, nor can it otherwise help the plaintiff." *Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997) (internal citations omitted); *see also Herrera v. Cleveland*, 8 F.4th 493, 499 (7th Cir. 2021) (Plaintiff used "John Doe" placeholders in original complaint, then amended after learning the defendants' names, but amendments did not relate back because "suing a John Doe defendant is a conscious choice, not an inadvertent error.").

In response, Warner points out that this case started out is state court and, under Indiana law, naming Jane/John Does "does serve as a place card and operates to allow the naming of responsible individuals even after the statute of limitations runs." (ECF No. 11 at 3 (citing *Miller v. Danz*, 36 N.E.3d 455 (Ind. 2015); Ind. R. Trial P. 17)). Essentially, Warner argues that because the case was removed, Indiana's Trial Rules should apply. But even if the Court were to entertain this argument and find Indiana procedure controlling,[1] the Complaint fails to establish a cause of action against any Jane/John Doe defendants.

Indiana Rule of Trial Procedure 8 ("General rules of pleading"), like its federal counterpart, requires "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Ind. R. Trial P. 8(A)(1); Fed. R. Civ. P. 8(a)(2). Put another way, the complaint must "put the defendant on notice concerning why it is potentially liable and what it stands to lose." *KS&E Sports v. Runnels*, 72 N.E.3d 892, 901 (Ind. 2017). Therein lies the problem for Warner; she does not state what any specific Jane or John Doe Defendant did regarding the alleged incidents. Warner does not "allege any act or omission by any particular 'John [or Jane] Doe.'" *Roseborough v. City of Trotwood*, 2006 WL 2524240, at *2 (S.D. Ohio Aug. 30, 2006). Instead, Warner refers to the

---

[1] Although neither party made an argument regarding which law is controlling, "[a] removed action proceeds as if it had been originally brought in federal court" and the federal rules of civil procedure become controlling. *Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005)

11

acts of various officers without "stat[ing] that any of them is one of the unidentified John [or Jane] Does, so…those officers and their employing entity cannot tell if they are alleged to have violated Plaintiffs' rights." *Id.* Gathering all unnamed defendants "in one undifferentiated lump" and alleging that they all simply violated the plaintiff's rights "does not satisfy the minimal notice pleading requirements of Fed. R. Civ. P. 8[,]" which mirrors Indiana's requirements. *Id.* No Jane/John Doe would be on notice of "why [they] are potentially liable [or] what [they] stand to lose." *Runnels*, 72 N.E.3d at 901

That said, any claims against any Jane/John Doe officers for the State should be dismissed. As pleaded, Warner simply fails to put them on notice.

### IV.     Conclusion

For these reasons, the State Defendant's Partial Motion to Dismiss (ECF No. 8) is GRANTED IN PART as to DISMISS Plaintiff's claim under 42 U.S.C. § 1983 against the State of Indiana and DISMISS all claims against Jane/John Doe police officers for the State of Indiana. The Motion (ECF No. 8) is OTHERWISE DENIED.

SO ORDERED May 9, 2025.

      s/ *Holly A. Brady*
      CHIEF JUDGE HOLLY A. BRADY
      UNITED STATES DISTRICT COURT